```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ANGELA E. HALL,

                        Plaintiff,           13-CV-0292(MAT)

            v.                               **DECISION
                                             and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff Angela E. Hall ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##13, 14.

## BACKGROUND

Plaintiff applied for DIB and SSI on December 2, 2008, alleging disability beginning May 14, 2007 due to congestive heart failure, depression, bronchitis, asthma, carpal tunnel syndrome ("CTS"), anemia sickle cell trait, thyroid problems, and lung problems. T. 40, 212.  Her claims were initially denied, and a hearing was requested before an Administrative Law Judge ("ALJ") on

December 18, 2009. T. 98-104. A video hearing was held on March 9, 2011 before ALJ Scott Staller. T. 61-89. Following the hearing, during which Plaintiff and a Vocational Expert ("VE") testified, the ALJ issued a written decision on March 24, 2011 finding Plaintiff not disabled. T. 40-49.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"),[1] the ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date; (2) she suffered from the severe impairments of chronic obstructive pulmonary disease ("COPD"), CTS, hypertension, anemia, congestive heart failure, obesity, depression, and anxiety; (3) her severe impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpart P, Appx. 1, and Plaintiff retained the residual functional capacity ("RFC") to perform light work with restrictions in reaching, handling, or fingering with both upper extremities; (4) Plaintiff was capable of performing her past relevant work as a housekeeper and laundry worker because this work was not precluded by her RFC; (5) Plaintiff had not been under a disability from May 14, 2007, through the date of the ALJ's decision. T. 40-49.

---

[1] See 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 24, 2013. T. 1-4. Plaintiff then filed this timely action. Dkt.#1.

The Commissioner now moves for judgment on the pleadings on the grounds that the ALJ's decision is correct, is supported by substantial evidence, and was made in accordance with applicable law. Comm'r Mem. (Dkt.#13-1) 13-22. Plaintiff's motion alleges that the ALJ's decision is erroneous because it is not supported by substantial evidence contained in the record, or is legally deficient, and therefore she is entitled to judgment on the pleadings. Pl. Mem. (Dkt.#14-1) 4-6.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## DISCUSSION

### I. General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept

the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the

pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

## II. <u>Medical Evidence</u>[2]

### A. Treating Sources

Plaintiff was treated by Dr. Lee Chalupka on July 26, 2007, for rash and right knee swelling with pain. T. 275. Plaintiff complained of ongoing pain for four years, and rated its severity at 9/10. Dr. Chalupka noted Plaintiff's history of pulmonary disease, asthma, migraines, cholecystectomy, and right arm problems. Plaintiff's symptoms were observed to be "mild" in severity, and Plaintiff appeared comfortable, alert, and ambulatory upon examination, despite her complaints of pain. T. 275-77. Her lower extremities appeared normal, with the exception of diffuse tenderness in the left knee, with normal range of motion. T. 277. Dr. Chalupka diagnosed Plaintiff with chronic pain exacerbation and eczema, and prescribed benadryl. <u>Id.</u>

---

[2] Plaintiff does not challenge the ALJ's determination as to her mental impairments. Pl. Mem. 4. As such, the Court primarily focuses on records documenting Plaintiff's medical treatment, although it will address Plaintiff's mental treatment as relevant to her motion.

Nearly two years later, Plaintiff was admitted to Mount St. Mary's hospital on April 9, 2009, upon the advice of her primary physician for an evaluation of low hemoglobin. T. 293. Plaintiff was diagnosed with mediastinal and hilar lymphadenopathy (enlargement of the lymph nodes), hepatosplenomegaly (enlargement of liver and spleen), profound anemia, pulmonary hypertension, tricuspid regurgitation, congestive heart failure, ground-glass opacity on chest CAT scan, history of tobacco use, hyperthyroidism, and normal colonoscopy pending biopsies. Id. Upon examination, Plaintiff appeared in no acute distress, yet appeared older than stated age. Neck, heart, neurological, and abdomenal examinations were normal, and an extremities examination showed moderate edema. T. 294. She was advised upon discharge to follow-up with her primary physician and to stop smoking. T. 295.

Plaintiff returned to Mount St. Mary's on April 14, 2009 for severe anemia, sickle cell trait, and mediastinal lymphadenopathy. T. 448. The physical examination was largely normal, however the doctor noted that Plaintiff had thyromegaly (enlargement of thyroid) with multinodular goiter, decreased air entry in the lungs and mild crackles at the back, moderate edema in her extremities, and palpable spleen and liver tip. T. 449. Dr. Yahya S. Hashmi suggested a mediastinal biopsy to rule out any neoplastic disorders, and opined that her severe anemia was likely a combination of chronic disease on the sickle trait. T. 449-50.

On April 21, 2009, Plaintiff saw Dr. Edward Ventresca for pulmonary function testing, which revealed that her forced vital capacity was mildly decreased, and her FEV1 was mildly decreased T. 292. Other pulmonary function tests were normal. Id. Dr. Ventresca diagnosed decreased baseline spirometry with normal lung capacity, suggesting "air trapping as may be seen with asthma," and moderate reduction in diffusing capacity. Id.

A chest and abdominal x-ray dated May 1, 2009 revealed moderate fecal retention, no evidence of discrete bowel obstruction, and interstitial markings in a manner compatible with pulmonary edema, suggesting an element of congestive heart failure. T. 288.

Shortly thereafter, Plaintiff was treated by Dr. Mohammad A. Khan, who indicated that Plaintiff had mild pulmonary hypertension, and a review of systems was unchanged. T. 351. Dr. Khan recommended follow-up pulmonary tests, a whole body CT PET scan, ACE level, and smoking cessation. Id.

Dr. Khan also completed a function report on May 4, 2009. T. 368-72. Therein, he diagnosed Plaintiff with "pulmonary heart disease – lymph nodes," and opined that Plaintiff had no limitations in lifting/carrying, standing/walking, sitting, and pushing/pulling, but could not provide a medical opinion regarding Plaintiff's ability to do work-related activities. T. 368, 371.

On October 6, 2009, Dr. Khan performed a pulmonary function test, finding reduced spirometric value with no obvious airflow obstruction, which could be secondary to inadequate effort. T. 473. Testing revealed the absence of significant response to bronchodilator, an increase in residual volume consistent with air trapping, and reduced diffusing capacity. T. 473.

A cardiac stress test conducted on October 8, 2009 revealed normal left ventricular wall motion, and left ventricular ejection fraction of 61%. T. 552. There was no evidence of ischemia. T. 552.

Dr. Khan noted that Plaintiff failed to appear for two separate PET scans, and continued to smoke two packs of cigarettes per day as of October 23, 2009.

An echocardiogram performed on February 5, 2010 revealed that Plaintiff's atria were at the upper limits of normal size, left ventricle was normal in size and function, right ventricle mildly enlarged with mildly reduced function, trace valvular regurgitation, and no pericardial effusion. T. 470.

On February 17, 2010, Dr. Ahmed noted significant thyromegaly as part of an otherwise normal physical examination. T. 583.

A CT scan of Plaintiff's chest taken on February 20, 2010, revealed early fibrotic lung disease. The reviewing physician stated that it "could be fibrosis, COPD or sarcoidosis." T. 523. Plaintiff's abdomen CT showed early hepatosplenomegaly, "a non

specific finding without fluid or evidence of active inflammation." Id.

On May 24, 2010, Plaintiff underwent thyroid surgery. T. 461, 492, 502.

In June, 2010, Dr. Khan noted during a visit that Plaintiff had not followed-up with him since October, 2009. T. 479. Plaintiff's physical examination was largely normal, and her asthma was stable. She was advised to quit smoking. T. 479.

A Holter test conducted in July of 2010 showed average results. T. 514.

On August 2, 2010, Plaintiff again saw Dr. Ahmed upon complaints of difficulty breathing upon exertion due to smoking and thyroiditis. T. 586-87. Dr. Ahmed reported that Plaintiff had a goiter, and was scheduled for thyroidectomy within the upcoming weeks. T. 586. Plaintiff's physical examination yielded some normal results, including no significant lymphadenopathy in the neck, normal gait and reflexes, and no edema in the extremities, however significant thyromegaly was noted. T. 586-87. Dr. Ahmed noted that a CT scan from February, 2010 showed no or resolved mediastinal lymphadenopathy. T. 586.

Plaintiff also saw psychiatrist Dr. Kalaiselvi Rajendran between July and September, 2009. The doctor terminated Plaintiff's treatment twice on the basis of Plaintiff's unreliability, non-

compliance with her appointments, and because her behavior was "not suitable" for an office environment. T. 381-82, 399.

### B. Consultative Examinations

Plaintiff was consultatively examined by Dr. Kathleen Kelley on July 24, 2009. T. 385. Plaintiff reported a heart attack in April, 2009, chest pain accompanying excitement and anxiety, asthma, and bilateral carpal tunnel syndrome. T. 385. Plaintiff stated that smoked one pack of cigarettes per day, cooked five days per week, but did not clean because she did not want to strain her heart. T. 385-86. She reported that when she wrote or braided her daughters hair, her hands would cramp and she needed to take breaks. T. 386. Plaintiff could not lift laundry baskets, but could perform other related chores, shopped once or twice per month with a friend, bathed and dressed herself daily, watched television and read. Id. She reported "no childcare activity" to Dr. Kelley. Id.

Plaintiff's physical examination indicated no acute distress, normal gait, ability to walk on the heels and toes without difficulty, and a 1/3 squat with questionable effort. T. 387. She demonstrated normal stance, full range of motion in her cervical spine, normal movement in the lumbar spine, used no assistive devices, needed no help changing or getting on and off the examination table. Id. Straight leg raising test was positive at 70 degrees in the supine position, negative while seated, and lumbar extension was limited to 10 degrees. T. 388. Plaintiff

otherwise had full range of motion and full strength in upper and lower extremities, stable and non-tender joints, with no redness, heat, swelling, or effusion. Id. She had slight pitting edema of both legs. Id. Plaintiff's deep tendon reflexes were present except for ankle jerks. Id. Dr. Kelley found no motor or sensory deficit. Id.

Dr. Kelley opined that Plaintiff would need comfort breaks for repetitive activity with both hands, and to avoid smoke, respiratory irritants, overexertion, heights, sharps, and heavy equipment. T. 389. She would need to take breaks to prevent becoming short of breath. Id.

A consultative psychiatric evaluation was conducted on November 6, 2007 by Dr. Thomas Chou, who opined that the results of Plaintiff's mental health screening were consistent with stress-related problems and did not appear to be significant enough to interfere with Plaintiff's daily functioning. T. 416. Dr. Chou diagnosed Plaintiff with adjustment disorder with mixed disturbance of emotions and conduct, pain disorder, rule out violent action due to hyperthyroidism, hyperthyroidism, congestive heart failure history, asthma, carpal tunnel syndrome, and obesity. Prognosis was fair, given no serious psychiatric problem. T. 412-17.

**III. Non-medical Evidence**

At her disability hearing, Plaintiff testified that she was 43 years-old, had a 10th grade education, and previously worked as

a housekeeper and nursing aide. T. 66-68. She did not drive because she let her license expire, and was driven to the hearing by her friend. T. 66.

Plaintiff told the ALJ that she had COPD, which caused her to become short of breath, carpal tunnel syndrome, which made her hands stiffen, and high blood pressure controlled by medication. T. 70. She stated that her chronic heart failure required her to sit up, causing her to have difficulty sleeping. T. 70-71. She also suffered from anxiety, anemia, and depression. T. 71-72.

With regard to daily activities, she stated that she would perform childcare, cook meals, help her children with their homework, relax, and read her bible. T. 72-73. She bathed and dressed herself, and performed some housework such as dishes and separating clothes, and grocery shopped twice a month. T. 73.

The ALJ also heard testimony from VE Maria Vargas. T. 82-87. The ALJ posed a hypothetical person of Plaintiff's age, education, and work experience, who could perform light work with frequent reaching, handling, and fingering with both hands; could understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with supervisors and coworkers; respond to usual work situations and changes; maintain attention and concentration for two-hour segments; and complete a normal workweek without excessive interruptions from psychologically or physically-based symptoms.

T. 83. The VE responded that Plaintiff's past work of housekeeper and laundry worker fit within that hypothetical. If the light work classification were further limited by only occasional reaching, handling, or fingering, then her past work would be eliminated, however such person could perform the jobs of counter clerk, bus monitor, or gate guard. T. 84-85. The ALJ further modified the hypothetical to encompass a person who was off-task for 20% or more of the day, or who missed two days of work per month. T. 85. The VE responded that no jobs would be available. Id.

With regard to the sedentary exertion work level with the original limitations, the hypothetical individual would be able to perform the jobs of order clerk, account clerk, or surveillance monitor, which exist in significant numbers in the national economy. T. 84. Those jobs too, would be eliminated, if the person were further restricted to only occasional reaching, handling, or fingering. Id.

**IV. The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.**

    **A.    Physical RFC Finding**

Plaintiff contends that the ALJ's physical RFC finding was not supported by substantial evidence on the following grounds: (1) the record does not establish that Plaintiff can perform frequent repetitive activity with both hands; (2) Plaintiff's exertional functional capacity is unsupported by the record; (3) the consultative examiner offered no opinion regarding Plaintiff's

ability to sit, stand, or walk; and (4) there is ample objective medical evidence to support Plaintiff's claim that she is limited to less than light work. Pl. Mem. 4-6. The Court will address each of Plaintiff's arguments in turn.

### 1. Repetitive Activity

Plaintiff first avers that Dr. Kelley's "vague" opinion regarding comfort breaks from repetitive hand activities cannot constitute substantial evidence to support the ALJ's RFC determination. Pl. Mem. 4.

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee v. Astrue, 631 F.Supp.2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).

"To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." Stanton v. Astrue, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), aff'd, 380

Fed. Appx. 231 (2d Cir. 2010). "An expert's opinion can be deemed 'not substantial' when the expert describes the claimant's impairments in terms which are 'so vague as to render it useless in evaluating' [p]laintiff's RFC." Mancuso v. Colvin, 2013 WL 3324006, *3 (W.D.N.Y. 2013) (quoting Burgess v. Astrue, 537 F.3d 117, 128-29 (2d Cir. 2008)). In other words, an expert's opinion that uses vague phrases may not constitute substantial evidence to support an RFC determination when it is "accompanied by no additional information, [and thus] prevent[s] the ALJ, as a layperson, from being able to make the necessary inference whether [p]laintiff can perform the particular requirements of a specified type of work." Id.

Plaintiff's contention on this point warrants little discussion because the ALJ specifically rejected the portion of Dr. Kelley's opinion regarding Plaintiff's ability to use her hands repetitively and her need for comfort breaks:

> This opinion is given little weight because the undersigned sees little objective medical evidence or evidence in her activities of daily living[ ] which suggests that the claimant cannot use her hands for repetitive activity. The claimant's activities of daily living suggest that the claimant can use her hands without comfort breaks because the claimant bakes and cooks for her family and sorts laundry.

T. 48.

Here, the ALJ did not incorporate a limitation into his RFC determination requiring Plaintiff to take "comfort breaks" during

a scheduled work day, thus any omission regarding how often the claimant would require breaks and how long those breaks would be is immaterial to his determination. See Cichocki v. Astrue, 729 F.3d 172 (2d Cir. 2013)(citing Zatz v. Astrue, 346 Fed.Appx. 107, 111 (7th Cir. 2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

### 2. Exertional Functional Capacity

For the same reason, the Court rejects Plaintiff's argument that Dr. Kelley's recommendation for Plaintiff to refrain from overexertion could not constitute substantial evidence in support of the ALJ's RFC finding. Pl. Mem. 5.

The ALJ found Plaintiff capable of performing light, unskilled work, including her past relevant work as a housekeeper and laundry worker. T. 48. Light work requires a person to be on her feet for up to two-thirds of a work day, lift 20 pounds occasionally, and 10 pounds frequently. 20 C.F.R. § 404.1567(b); SSR 83-10.

In his RFC determination, the ALJ did not adopt Dr. Kelley's recommendation that Plaintiff should avoid overexertion, thus defining the term "overexertion" would not change his finding that Plaintiff was able to perform light work. See Blowers v. Astrue, No. 05-CV-557, 2008 WL 398464, at *6 (N.D.N.Y. Feb. 12, 2008) ("When, as here, the evidence of record permits the Court to glean the rationale of an ALJ's decision, the Court will not require that

he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.")

### 3. Work-related Physical Activities

Plaintiff next contends that Dr. Kelley's silence with respect to Plaintiff's ability to lift, stand, walk, and sit should not be construed as an opinion that Plaintiff had an unlimited ability to perform these functions. Pl. Mem. 5.

While it is true that the silence of a consultative physician on an issue pertinent to a claimant's RFC is not an appropriate basis on which to resolve that issue to the claimant's detriment, see Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999), such is not the case here.

Plaintiff's treating physician Dr. Kahn opined that Plaintiff would have no limitations in lifting/carrying, standing/walking, sitting, pushing/pulling, or other postural functions. T. 371. The remainder of the record, which includes mild to moderate findings, supports Dr. Kahn's function report. Cf. Perez-Rodriguez v. Astrue, 2011 WL 6413763 (S.D.N.Y. 2011), (ALJ erred in interpreting consultative examiner's silence on the issue of lifting as an affirmative refutation of a treating physician's opinion). The ALJ's RFC determination that Plaintiff could perform light work with the above-mentioned limitations in reaching, handling, and

fingering, is therefore supported by substantial evidence in the record.

### 4. Light Work

Finally, Plaintiff argues that Plaintiff could not perform light work because the medical evidence supports dyspnea and fatigue so significant that she reported to her physician she was "unable to walk across a room without getting short of breath." T. 326. Pl. Mem. 6.

The Court reminds Plaintiff that subjective complaints alone cannot establish conclusive evidence of a disability under the Act. 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques."); accord Betances v. Comm'r, 206 Fed. Appx. 25, 26 (2d Cir. 2006) (summary order). Substantial evidence in the record supports the ALJ's finding regarding Plaintiff's credibility.

In finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible, the ALJ pointed out that despite a diagnosis of COPD, Plaintiff's medical examinations and objective testing generally showed normal lung capacity and moderate reduction in diffusing

capacity. T. 288, 319, 509. Ignoring her doctors' repeated orders, Plaintiff continued to smoke one or two packs of cigarettes per day. T. 276, 295, 305, 385, 478. Plaintiff's treating psychiatrist characterized her as unreliable and a "poor historian," and the consultative examiner questioned Plaintiff's effort with respect to the physical examination. T. 387, 389. Thus, her complaint to doctors that she was "unable to walk across a room without getting short of breath" is insufficient to undermine the ALJ's RFC determination. T. 326.

It is well within the discretion of the Commissioner to evaluate the credibility of Plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology. See Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984). Although Plaintiff certainly possesses multiple serious impairments, they do not, considered singly and in combination, have any more than a minimal impairment on her ability to work. The ALJ therefore properly concluded that Plaintiff's allegations of disability were not entirely credible after evaluating them in light of the records of treating and examining physicians, and his RFC determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons the Commissioner's motion for judgment on the pleadings (Dkt.#13) is granted, and Plaintiff's

cross-motion for judgment on the pleadings (Dkt.#14) is denied. The complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         December 9, 2014